John F. LEBUS, Regional Director of the 15th Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD,

v.

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 861, AFL–CIO.

Civ. A. No. 8193.

United States District Court
W. D. Lousiana,
Lake Charles Division.

March 20, 1961.

Charles M. Paschal, Jr., New Orleans, La., Marvin Roth, Washington, D. C., for plaintiff.

C. Paul Barker, New Orleans, La., for defendant.

HUNTER, District Judge.

This cause came on this day to be heard upon the verified petition of John F. Lebus, Regional Director of the Fifteenth Region of the National Labor Relations Board (herein called the Board), for a temporary injunction pursuant to Section 10($l$) of the National Labor Relations Act, as amended (herein called the Act), 29 U.S.C.A. § 160($l$) pending the final disposition of the matters involved herein pending before the Board, and upon the issuance of an order to show cause why injunctive relief should not be granted as prayed in said petition. Respondent filed an answer to said petition. A hearing on the issues raised by the petition and answer was duly held on March 20, 1961. All parties were afforded full opportunity to be heard, to examine and cross-examine witnesses, to present evidence bearing on the issue, and to argue on the evidence and the law. The Court has fully considered the petition, answer, evidence, arguments, and briefs of counsel. Upon the entire record, the Court this same day makes the following:

Findings of Fact.

1. Petitioner is Regional Director of the Fifteenth Region of the Board, an agency of the United States, and filed the petition herein for and on behalf of the Board.

2. (a) On or about March 3, 1961, Cleveland Construction Corporation and Elco Electric, Inc. (herein called Cleveland and Elco, respectively), pursuant to the provisions of the Act, each filed a charge with the Board alleging that International Brotherhood of Electrical Workers, Local 861, AFL-CIO, a labor organization, has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i), subparagraph (B) of the Act.

(b) On or about March 13, 1961, Cleveland and Elco, pursuant to the provisions of the Act, each filed an amended charge to the charge originally filed by it with the Board on or about March 3, 1961, said amended charges alleging that respondent has engaged in, and is engaging in, unfair labor practices within the meaning of Section 8(b) (4) (i) and (ii), subparagraph (B) of the Act.

3. The aforesaid charges and amended charges were referred to petitioner as Regional Director of the Fifteenth Region of the Board.

4. There is, and petitioner has, reasonable cause to believe that:

(a) Respondent, an unincorporated association, is an organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work.

(b) Respondent maintains its principal offices at Lake Charles, Louisiana, and at all times material herein respondent has been engaged within this judicial district in transacting business and in promoting and protecting the interests of its employee members.

(c) Cleveland is engaged at Crowley, Louisiana, as a general contractor in the building and construction industry. In the operation of its business, Cleveland annually receives goods and materials from outside the State of Louisiana valued at in excess of $50,000.

(d) Elco is engaged at Rayne, Louisiana, as an electrical contractor in the building and construction industry. In the operation of its business, Elco annually receives goods and materials from outside the State of Louisiana valued at in excess of $50,000.

(e) At all times material herein, Cleveland has been engaged, pursuant to contract with the Louisiana Bank and Trust Company, in the construction of a bank building at Crowley, Louisiana (herein called the Bank Building), and at all times material herein, Cleveland has subcontracted the electrical work at the Bank Building to Elco.

(f) Since on or about February 28, 1961, respondent has been engaged in a labor dispute with Elco.

(g) At no time material herein has respondent had any labor dispute with Cleveland.

(h) In furtherance of its labor dispute with Elco, respondent on or about and after March 1, 1961, picketed the Bank Building construction site.

(i) Said picketing has occurred at times when none of the employees of Elco were present at or performing services at the job site.

(j) Respondent has picketed said Bank Building construction site notwithstanding that Elco maintains a regular place of business at Rayne, Louisiana, to which most of its employees regularly report at the beginning and end of each work day (4 out of 5 in this instance).

(k) As a result of the picketing by the Union, the employees of Cleveland, and of various subcontractors, other than Elco, ceased working and refused to perform services.

(5) The Court has heretofore found, in Finding 4(i) above, that the picketing occurred at times when none of the employees of Elco were present at or performing services at the job site. It is apparent that Elco removed its employees after the picketing started on the job. It is also apparent that if the picketing stops Elco's employees will return.

(6) The picketing was at all times peaceful, there was no threats, there was no coercion. The pickets carried signs which read as follows:

"No Dispute with Any Other Employer,

Elco Electric Company has Substandard Wages and Working Conditions

I.B.E.W. Local Union 861 AFL-CIO"

(7) The only labor dispute existing between Elco and the Union had to do with the job site that was picketed.

8. Rayne, Louisiana, where the office of Elco is located, is seven miles' distance from the City of Crowley, where the job site was located.

9. Other than the picketing the Union has taken no other overt act, either verbally or otherwise, to induce other employees to cease working on this project.

Discussion and the Law.

This Court has jurisdiction of the parties and the subject matter of this proceeding and under Section 10(l) of the Act is empowered to grant injunctive relief. Respondent is a labor organization within the meaning of Sections 2(5), 8(b) and 10(l) of the Act. Elco is engaged in commerce within the meaning of Sections 2(6) and (7) of the Act. Cleveland and its subcontractors are engaged in commerce or in industries effecting commerce within the meaning of the Act.

As the Court sees this case, there are two complaints that the Board makes upon which they base their contention that the picketing is illegal. These are found in Paragraphs 5(i) and 5(j). Paragraph 5(i) says:

"Said picketing has occurred at times when none of the employees of Elco were present at or performing services at the job site."

Paragraph 5(j) says:

"Respondent has picketed said Bank Building construction site notwithstanding that Elco maintains a regular place of business at Rayne, Louisiana, to which its employees regularly report at the beginning and end of each work day."

The Board asks the Court to conclude that from these two instances the Union has an illegal objective under Section 8 (b) 4(i) (ii) (B).

All such cases must be clearly differentiated upon their faces and this Court is faced with the problem of balancing the relative weights of the interests of the neutral employer in his business and of the interests of the picketing employees in their labor dispute. This right to picket in a legitimate labor dispute is guaranteed by Section 7 of the Act and re-affirmed by Section 13 of the Act, 29 U.S.C.A. § 151 et seq. The actions that are proscribed and complained of here are set out in Section 8(b) (4) (i), and (ii) (B) of the Act.

█ When a Union has a dispute with an employer, picketing at the situs exclusively occupied by that employer is primary and protected. When, in furtherance of that primary dispute, the union pickets the situs exclusively occupied by a neutral employer, the picketing is secondary and prohibited. The troubling question arises when the primary employer and the neutral employer occupy the same situs. In such a situation, to accommodate the right of the union to picket the primary employer with the right of the neutral employer to be free of picketing, the National Labor Relations Board has held that "picketing of the premises of a secondary employer is primary as it meets the following conditions," Moore Drydock Company, 92 National Labor Relations Board 549:

"(a) The picketing is strictly limited to times when the *situs* of dispute is located on the secondary employer's premises; (b) at the time of the picketing the primary employer is engaged in its normal business at the *situs*; (c) the picketing is limited to places reasonably close to the location of the *situs*; and (d) the picketing discloses clearly that the dispute is with the primary employer."

The heart of the accommodation is the right of the Union to advertise its primary dispute at the place where the primary employer could be found and the right of the secondary employer to be free of picketing and permitting limited picketing at the secondary employer's premises if the situs of the dispute was there, and if the primary employer could not be found elsewhere in the area for the purpose of picketing. As related at the outset, the allegations of illegality are based on two contentions, the first of which is:

*(A) Picketing occurred at times when none of Elco employees were present or performing services at the job site.* Elco removed its employees after the picketing started on the job. The picketing ceased and Elco again put its employees to work; the picketing began again and Elco removed its employees. Just as in Site Oil [1] and as in Salt Dome Production,[2] the situs of the dispute here was where the work was being performed. Whether the employees were still there or not there is no contention that they did not intend to return there. An employer is *not to be permitted to transform a picket line from a legal one to an illegal one merely by moving his employees away when pickets arrive.*

The second contention is:

*(B) The picketing at the Bank Building construction job took place notwithstanding that Elco maintained a regualr*

1. Local 618, Automotive Petroleum and Allied Industries Employees Union, AFL–CIO v. National Labor Relations Board, 8 Cir., 1957, 249 F.2d 332.

2. Seafarers International Union of North America, etc. v. National Labor Relations Board, 1959, 105 U.S.App.D.C. 211, 265 F.2d 585.

*place of business at Rayne, Louisiana.* The position of the petitioner is that the Union had a right to picket, but that they were under an obligation to find a place to picket which would not in any way affect Cleveland, and then it is argued that such a place existed at Rayne, Louisiana, which is located some seven miles from Crowley. The answer to that is that the situs of this dispute is in Crowley, not in Rayne. The case of Brewery and Beverage Drivers and Workers Local Union No. 67 v. National Labor Relations Board, 1955, 95 U.S. App.D.C. 117, 220 F.2d 380, is clearly distinguishable and it does not necessarily follow that the facts of that case can be extended to cover the facts here.

In the Salt Dome case, supra, the argument was made that the union should have picketed at Leesville, Louisiana, where the employees reported to work and where the company maintained an office and from which the company transported the employees back and forth. The Court of Appeals disposed of this argument by pointing out that the situs of the dispute was the vessel itself where the employees performed the work and not the location at Leesville, far removed from the situs of the dispute. Of course, Crowley is only seven miles from Rayne, but we believe that where the office of the company was in an entirely separate and different town and the work was being performed in a completely different location that the area for the purpose of picketing should be the area within the corporate limits of Crowley or in the immediate vicinity thereof. We believe that the union had the right to publicize, not only to the employees of Elco, but also to the people of Crowley and to any potential workman on the job that they had a dispute with Elco and that this work was being done under substandard working conditions.[3] We think such peaceful picketing upon common premises directed, at least on the record, solely against the primary employer with whom a labor dispute exists, is still lawful under the Act, and that any adverse effect upon secondary neutral employees must necessarily be viewed as incidental to the lawful exercise of that statutory right. National Labor Relations Board v. General Drivers et al., 5 Cir., 1955, 225 F.2d 205.

The injunction should be denied. It is.

---

3. The Court is not saying that the working conditions were substandard, but this is what the union was claiming and they had a right to say it.